IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY M. BRENEISEN and DANIEL BRENEISEN, individually, and on behalf of all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 20 C 2867<br>) |
| COUNTRYSIDE CHEVROLET/BUICK/ GMC, INC., | ) Judge John Z. Lee<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Kelly and Daniel Breneisen offered to pay cash for a car from Countryside Chevrolet/Buick/GMC, Inc. ("Countryside"), but ended up walking away from the deal. When the Breneisens later discovered that, against their explicit instructions, Countryside had run a credit check on them, they sued Countryside on behalf of themselves and those similarly situated, alleging a violation of the Fair Credit Reporting Act ("FCRA"),15 U.S.C. § 1681b(f). Countryside has moved to dismiss the complaint for lack of personal jurisdiction, or, in the alternative, for improper venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). For the reasons provided below, the motion to dismiss for lack of personal jurisdiction is granted.

## I. Factual Background[1]

The Breneisens, who are Illinois residents, were in the market for a car in June 2018. Compl. ¶ 8, ECF No. 1. They searched Countryside's website, became interested in a 2018 Chevrolet Malibu, and visited Countryside in Wisconsin for a test drive. *Id.* ¶¶ 9–10.

A price was negotiated, and the Breneisens informed the salesperson that they would be paying in cash. *Id.* ¶ 13. They explicitly instructed Countryside's salesman not to conduct a credit check because they did not require financing. *Id.* ¶¶ 12–14, 18. The salesperson assured the Breneisens that a credit check was unnecessary, but said he needed their social security numbers to complete the purchase. *Id.* ¶ 19. Based on that representation, they reluctantly provided their social security numbers. *Id.* ¶ 20. When the salesperson explained that there would be an additional fee to purchase the car with a cashier's check, the Breneisens decided not to purchase the car and never returned to Countryside. *Id.* ¶¶ 24–27.

About a month later, on July 18, 2018, the Breneisens each received a letter from Countryside indicating that it had accessed their Experian and Trans Union credit reports because the Breneisens had "inquired about doing business with Countryside Auto Group." *Id.* ¶ 28. A salesperson then called the Breneisens to see if they were still interested in purchasing the 2018 Chevrolet Malibu. *Id.* ¶ 29. During this call, when Kelly Breneisen asked the salesperson why Countryside had

---

[1] On a motion to dismiss, the Court views "the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454 (7th Cir. 2020) (internal quotations omitted).

run a credit check on her and her husband, the salesperson responded that it was "standard procedure." *Id.* ¶¶ 30–31. Kelly became infuriated that Countryside systematically conducted unauthorized credit checks and ended the call. *Id.* ¶ 32.

Years have passed, and Countryside's "hard inquiry" remains on the Breneisens' credit reports, thereby adversely impacting the Breneisens' credit score. *Id.* ¶¶ 33, 38. Other lenders have questioned the Breneisens about Countryside's "hard inquiry" and have concluded that they are high-risk consumers based on an assumption that they were denied financing by Countryside. *Id.* ¶ 39. They assert that Countryside's conduct has caused them anxiety, distress, and mental anguish. *Id.* ¶ 41.

The Breneisens, on behalf of themselves and other similarly situated, have sued Countryside for violating FCRA by regularly accessing consumers' credit reports under false pretenses. *Id.* ¶¶ 45–49. Countryside has moved to dismiss the complaint based on lack of personal jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3).

## II.  Legal Standard

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the Court first must decide whether any material facts are in dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If such a dispute exists, the Court must hold a hearing at which the plaintiff must establish personal jurisdiction by a preponderance of the evidence. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). Where, as here, there are no disputes of material

facts, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713.

### III. <u>Analysis</u>

Personal jurisdiction comes in two forms—general or specific. *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575 (7th Cir. 2020). "General jurisdiction is all-purpose; it permits a defendant to be sued in a forum for any claim, regardless of whether the claim has any connection to the forum state." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). "For a court to exercise general jurisdiction over an out-of-state defendant, the defendant's connection to the forum state must be so continuous and systematic as to render [it] essentially at home there." *J.S.T. Corp.*, 965 F.3d at 575 (internal quotation marks omitted). On the other hand, specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up).

The Breneisens concede that general jurisdiction is lacking. Instead, they assert that specific jurisdiction exists over Countryside.

A court may exercise specific jurisdiction over a defendant when "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). In addition, any exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial

4

justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The Breneisens argue that specific jurisdiction exists over Countryside because it "purposefully directed its activities at Illinois by committing the tort of unlawfully accessing Plaintiffs' credit reports in Illinois." Pls.' Resp. Opp'n Mot. Dismiss ("Pls.' Resp.") at 5–6, ECF No. 20. In support, they cite *Rogers v. Smith Volkswagen, Ltd.*, No. CV 19-2567, 2020 WL 1676400 (E.D. Pa. Apr. 6, 2020).

In *Rogers*, the district court held that the plaintiff, a Pennsylvania resident, had sufficiently alleged a *prima facie* case of personal jurisdiction over the defendant, a Delaware corporation, where the plaintiff asserted that the defendant had accessed the plaintiff's credit report from a Trans Union facility in Chester, Pennsylvania. *Id.* at *5. Because the defendant had accessed the credit report in Pennsylvania, the court found that the defendant had purposefully availed itself of the privilege of conducting business in the forum state. *Id.* at *4–5. Moreover, the court held that the injury arose out of the defendant's forum-related activities, rendering personal jurisdiction in that forum proper. *Id.* at *5–6.

In contrast, here, the Breneisens have not alleged that Countryside accessed their credit reports from Experian or Trans Union in Illinois. Instead, they merely allege, without any detail, that Countryside pulled their Experian and Trans Union credit reports. Compl. ¶¶ 28, 30, 34, 35. The Breneisens then speculate that Countryside's conduct must have occurred in Illinois because they are Illinois residents. *See* Pl.'s Resp. at 5–6. But, as the Supreme Court has stated, "the plaintiff

cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see Ratliff v. Celadon Trucking Servs., Inc.*, No. 17 CV 7163, 2018 WL 1911797, at *5 (N.D. Ill. Apr. 23, 2018) ("The only connection Ratliff has identified between defendants' conduct and Illinois was his location; that is not enough to establish specific jurisdiction."). Accordingly, absent any allegation that Countryside reached into Illinois to access their credit reports, for example, from an Experian or Trans Union facility located in Illinois, the Breneisens have not alleged a *prima facie* case of personal jurisdiction over Countryside. Accordingly, exercising personal jurisdiction over Countryside in Illinois would not satisfy traditional notions of fair play and substantial justice.

Countryside's motion to dismiss for lack of personal jurisdiction is, therefore, granted. Because the Court's analysis under Rule 12(b)(2) is dispositive, it need not address Countryside's improper venue argument.[2]

---

[2] In their response brief, the Breneisens ask the Court to transfer venue to the Eastern District of Wisconsin. In the absence of a formal motion, which the Breneisens have failed to file, the Court cannot conclude that this action should be transferred.

## IV. <u>Conclusion</u>

For the reasons discussed above, Countryside's motion to dismiss for lack of personal jurisdiction is granted. The case is dismissed without prejudice with leave to file an amended complaint no later than March 29, 2021, if the Breneisens and their counsel can do so in good faith and in compliance with their obligations under Rule 11. *See* Fed. R. Civ. P. 11(b)(1)–(3).

**IT IS SO ORDERED.**          ENTERED:  3/15/21

*[signature]*

———————————————

**JOHN Z. LEE**
**United States District Judge**